**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEITH WORTHY, | Case No. 2:23-cv-17570 (BRM) (JSA) |
| Plaintiff, | **OPINION** |
| v. | |
| UNILEVER UNITED STATES, INC., *et al.*, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Unilever United States, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 10) Plaintiff Keith Worthy's ("Plaintiff") Complaint (ECF No. 1-1), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff filed an Opposition (ECF No. 12), and Defendant filed a Reply (ECF No. 13). Having reviewed the submissions filed in connection with Defendant's Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 10) is **GRANTED**.

**I.    BACKGROUND**

**A.  Factual Background[1]**

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the

---

[1] The factual background is taken from the allegations in the Complaint (ECF No. 1-1), as well as the exhibits Defendant submitted in support of its Motion (*see* ECF No. 10-5). The Court considers these exhibits in deciding Defendant's Motion because Plaintiffs' claims rely on these documents (*see* ECF No. 1-1), which include (1) a copy of Plaintiff's signed offer letter from Defendant, (2) a copy of Plaintiff's request for an exemption from Defendant's COVID-19 vaccination policy, and (3) a copy of Defendant's denial of Plaintiff's request—and because Plaintiff does not appear to object to the Court considering these documents, and indeed cites to these exhibits in his

Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court may also consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of alleged discrimination on the basis of religion and race/ethnicity in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1, *et seq.* (*See generally* ECF No. 1-1.) Plaintiff is a Black/African-American man and is a devout follower of Kemetism, a religion originating out of Northern Africa. (*Id.* ¶ 6.) Plaintiff is also a resident of Michigan and a former employee of Defendant. (*Id.* ¶ 1.) Defendant is a corporate entity doing business in New Jersey and has a location in Englewood Cliffs, New Jersey. (*Id.* ¶ 2.)

In March 2021, Plaintiff, who was living in California at the time, received an offer of employment from Defendant, the acceptance of which would require relocating to New Jersey. (*Id.* ¶¶ 7–8.) Prior to being hired, Plaintiff advised Defendant of his concern of potentially being required to receive a COVID-19 vaccine, which would violate his sincerely held religious beliefs. (*Id.* ¶¶ 10–11.) Defendant assured Plaintiff it would never force him to receive a COVID-19

---

Opposition (*see* ECF No. 12). Courts can consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (citation omitted). A district court may also consider any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). *See also Aliano*, 2023 WL 4398493, at *3 ("Documents attached by a defendant to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010))). However, the Court does not consider the additional factual allegations contained in Plaintiff's Opposition (*see* ECF No. 12) because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

vaccination as part of his employment, and in reliance on this representation, Plaintiff accepted Defendant's offer of employment, sold his home in California, and relocated to New Jersey. (*Id.* ¶¶ 12–15.)

In April 2021, Plaintiff began working remotely for Defendant as Senior Manager of Labor Relations and Strategy. (*Id.* ¶ 16.) Approximately two months later, Plaintiff learned that Defendant was "exploring" a vaccine mandate, and in September 2021, Defendant implemented a new policy requiring all employees based out of Defendant's headquarters, including Plaintiff, to receive the COVID-19 vaccine. (*Id.* ¶¶ 18, 21.) Plaintiff formally applied for a religious exemption to this new mandate, stating that receiving a COVID-19 vaccine would violate his sincerely held religious beliefs as a follower of Kemetism.[2] (*Id.* ¶¶ 6, 10, 18, 31–32.) Defendant denied Plaintiff's request for a religious exemption, claiming that to do so would impose a hardship on the company. (*Id.* ¶¶ 22–23, 33.) Additionally, according to Plaintiff, in the following months, company leadership became increasingly hostile towards people like him who had not received the COVID-19 vaccine, and he was subjected to hostile and degrading comments including sometimes being referred to as a "fucking anti-vaxxer[]." (*Id.* ¶¶ 24, 48.)

In March 2022, Plaintiff alerted Human Resources ("HR") to the allegedly hostile environment that had developed, and shortly after reporting these concerns, Defendant fired Plaintiff for refusing to comply with its mandatory vaccination policy. (*See id.* ¶¶ 25–26, 48–50.) Defendant subsequently replaced Plaintiff with a white man who, upon Plaintiff's information and belief, is not a follower of Kemetism. (*Id.* ¶ 27.) Plaintiff alleges he suffered discrimination, including failure to accommodate, harassment/hostile work environment, and wrongful

---

[2] Plaintiff also states he "never worked in-person; rather, he performed all of his responsibilities remotely, thereby posing no real danger of transmitting a virus [including COVID-19] to/from any employee or customer of Defendant." (ECF No. 1-1 ¶ 20.)

3

termination on the basis of his religion, his race/ethnicity, and/or his complaint to HR. (*See id.* ¶¶ 28–52.) Plaintiff also alleges Defendant breached an express or implied contract with him by promising him he would not be forced to be vaccinated against COVID-19 in violation of his sincerely held religious beliefs and then later reneging on that promise and subsequently firing him for refusing to receive the COVID-19 vaccine. (*See id.* ¶¶ 53–60.)

### B. Procedural History

On September 5, 2023, Plaintiff filed a Complaint against Defendant in the Superior Court of New Jersey, Bergen County, Law Division, captioned *Kevin Worthy v. Unilever United States Inc.; John/Jane Does 1-5, XYZ Corporation 1-5*, No. BER-L-004736-23 (the "State Court Action").[3] (ECF No. 1-1.) In the Complaint, Plaintiff asserts the following four causes of action— "Discrimination, including Harassment/Hostile Work Environment, Failure to Accommodate, and Wrongful Termination, on the basis of Religion and/or Creed" in violation of the NJLAD (Count I); "Discrimination, including Wrongful Termination, on the basis of Race/Ethnicity" in violation of the NJLAD (Count II); Retaliation in violation of the NJLAD (Count III); and "Breach of Contract and/or Equitable Estoppel under Common Law" (Count IV). (*Id.* at 5–8.) On September 7, 2023, Defendant filed a Notice of Removal, removing the State Court Action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.[4] (ECF No. 1 at 1, 4–7.) Defendant

---

[3] Plaintiff also names "John/Jane Does 1-5" and "XYZ Corporations 1-5" as fictitious individual and corporate defendants in the Complaint. (ECF No. 1-1.)

[4] In diversity cases, the "forum defendant rule" allows an action removable based on diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *See* 28 U.S.C. § 1441. Therefore, the "forum defendant rule" precludes removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case. *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81 (3d Cir. 1999). Because Defendant here is a citizen of the forum state where Plaintiff originally filed his Complaint—New Jersey—removal to this Court is improper if the forum defendant rule applies. Therefore, even though Plaintiff does not contest jurisdiction in

states the Notice of Removal was timely filed. (*Id.* at 2.)

On December 4, 2023, Defendant filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 10.) On January 2, 2024, Plaintiff filed an Opposition (ECF No. 12), and on January 9, 2024, Defendant filed a Reply (ECF No. 13).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual

---

this Court, the Court briefly analyzes whether the forum defendant rule applies here to confirm whether it has subject matter jurisdiction over this action. Defendant removal is proper under a process known as snap removal and asserts the "forum defendant rule" is inapplicable to this action because it "has not been 'properly joined and served' in the State Court Action." (ECF No. 1 at 5.) The Third Circuit allows a resident defendant to remove to federal court prior to service of process. *See Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153–54 (3d Cir. 2018). Defendant states service is incomplete because: (1) it had not been served with the Complaint as of the date of filing the Notice of Removal; (2) Plaintiff has not requested Defendant's counsel accept service of the Complaint; (3) in between when Plaintiff filed the Complaint and the date of the filing of the Notice of Removal, the parties' respective counsel had not communicated; and (4) the case docket for the State Court Action did not reflect service of process as of the date of the filing of the Notice of Removal. (ECF No. 1 at 5; ECF No. 1-1, Exs. C, D.) In light of these facts, the Court is satisfied that it has subject matter jurisdiction over this action as it finds Defendant's snap removal argument persuasive and concludes the forum defendant rule is inapplicable to this case. Further, the Court agrees with Defendant that it has diversity jurisdiction over this matter.

allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *See id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported

6

by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that plaintiffs must show that the allegations of their complaints are plausible. *See id.* at 670.

While courts generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III. DECISION

Defendant argues Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6) and, additionally, that it should be dismissed with prejudice because each of Plaintiff's claims fails as a matter of law, any amendment would be futile, and "in several cases similar to Plaintiff's, courts have routinely granted Rule 12 motions to dismiss with prejudice." (*See generally* ECF Nos. 10, 13.) In opposition, Plaintiff contends his Complaint sufficiently states a claim for discrimination in violation of the NJLAD on the basis of religion/creed and/or race/ethnicity, retaliation in violation of the NJLAD, and breach of contract/estoppel, and

accordingly the Court should not dismiss his Complaint. (*See generally* ECF No. 12.) Alternatively, Plaintiff requests leave to amend. (*See id.* at 20.)

The Court addresses each of Plaintiff's claims, and Defendant's corresponding arguments for why those claims should be dismissed, in turn. "[F]or each claim, while a plaintiff need not make out a prima facie case, he must allege enough facts that 'raise a reasonable expectation that discovery will reveal evidence of the necessary elements.'" *Aliano v. Twp. of Maplewood*, Civ. A. No. 22-05598, 2023 WL 4398493, at *3 (D.N.J. July 7, 2023) (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

### A. Defendant's Motion to Dismiss Count I of the Complaint—Alleged Religious Discrimination in Violation of the NJLAD

In Count I of the Complaint, Plaintiff appears to allege three distinct, yet related, causes of action under the umbrella of religious discrimination in violation of the NJLAD—(1) failure to accommodate a sincerely held religious belief, (2) wrongful termination, and (3) harassment/hostile work environment. (*See* ECF No. 1-1.) The Court first addresses the sufficiency of Plaintiff's allegations with respect to the failure to accommodate and wrongful termination claims and then addresses the sufficiency of Plaintiff's allegations with respect to Plaintiff's harassment/hostile work environment claim.

#### 1. Alleged Religious Discrimination By Failing to Accommodate Sincerely Held Religious Beliefs and Wrongful Termination

Defendant argues Plaintiff fails to state a religious discrimination claim in violation of the NJLAD because: (1) he does not specifically plead a sincerely held religious belief that conflicts with Defendant's COVID-19 vaccination policy or that entitles him to religious accommodation as Plaintiff cannot show his beliefs regarding vaccination are religious; (2) he did not provide Defendant adequate notice of the alleged conflict; and (3) Plaintiff cannot point to any "tangible

outward 'signs' from Kemetism that would show a conflict with vaccination." (ECF No. 10-1 at 2, 8–14; ECF No. 13 at 2–5.) Defendant asserts that when asked to state how Kemetism conflicted with its vaccination policy, "Plaintiff supplied only two Wikipedia articles, neither of which makes any reference to any specific beliefs or practices regarding one's body or health, let alone vaccines" and contends that Plaintiff's specific personal beliefs, however sincere, are not sufficiently connected to structurally grounded religious beliefs for purposes of entitling him to religious accommodation under the NJLAD. (ECF No. 10 at 2; ECF No. 13 at 4.) Defendant also contends its COVID-19 vaccine policy was a lawful mandate, subject to an accommodation process for a sincerely held religious belief, among other things, and Plaintiff does not contend that this policy was unlawful. (ECF No. 10 at 1; ECF No. 13 at 2.)

In opposition, Plaintiff argues he states a religious discrimination claim because he specifically alleges how his religious beliefs conflict with Defendant's vaccination policy and entitle him to religious accommodation. (ECF No. 12 at 1, 4–8.) Plaintiff contends he provided in the religious accommodation request form two full paragraphs of information setting forth the basis of his sincere religious beliefs and how they conflicted with Defendant's vaccination policy. (*Id.* at 7–8.) Plaintiff also asserts that, unlike the plaintiffs in the cases to which Defendant cites in support of its argument, he "was working in a fully remote role and was offered no accommodation whatsoever." (*Id.* at 8.)

The NJLAD prohibits discrimination "on the basis of a litany of enumerated factors including, *inter alia*, race, creed, color, national origin, ancestry, age, sexual orientation, and gender identity." *See generally* N.J. Stat. Ann. §§ 10:5-1, *et seq.* Specifically, the NJLAD states:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) [f]or an employer, because of the race, creed, color, national origin, [etc.] . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; . . . [or] (q) [f]or any employer to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance, . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious observance or practice without undue hardship on the conduct of the employer's business.

N.J. Stat. Ann. §§ 10:5-12(a), (q)(1). Courts employ the same framework and standard of review when analyzing claims brought under the NJLAD as they do for analyzing claims brought under Title VII. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD[.]") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)).[5] "To establish a *prima facie* case of religious discrimination, a plaintiff must show that (1) she held a sincere religious belief that conflicted with a job requirement, (2) she informed her employer of the conflict, and (3) she was disciplined for failing to comply with the conflicting requirement." *McKinley v. Princeton Univ.*, Civ. A. No. 22-05069, 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) (citing *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)); *see also Saqa v. Factory Mut. Ins. Co.*, Civ. A. No. 23-03994, 2024 WL 939689, at *4 (D.N.J. Mar.

---

[5] The NJLAD has parallel provisions to Title VII for discrimination, retaliation, and failure to accommodate. *Aliano*, 2023 WL 4398493, at *4 (citing N.J. Stat. Ann. § 10:5-12(a), (q), (r)); *see also McKinley*, 2023 WL 3168026, at *2 ("Because the analyses for Title VII and NJLAD claims are the same, the Court will analyze the claims together. . . . Under Title VII and the NJLAD, employers are prohibited from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment, based on religion. Title VII and the NJLAD further forbid employers from failing to reasonably accommodate an employee's sincerely held religious beliefs." (citations omitted)). Accordingly, courts assess claims brought pursuant to the NJLAD in the same way they assess claims brought under Title VII. *Id.* (citations omitted); *Saqa*, 2024 WL 939689, at *3 n.2 (same). Therefore, even though Plaintiff does not allege any Title VII claims in the Complaint (*see* ECF No. 1-1), the Court analyzes Plaintiff's NJLAD claims in the same way it would assess similar claims brought under Title VII, in accordance with Third Circuit precedent.

5, 2024) (listing the same standard for stating a claim for failure to accommodate a sincerely held religious belief (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008))). "If a prima facie case is established, 'the burden shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business.'" *Id.* (quoting *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010)).

Additionally, "New Jersey courts have adopted the burden-shifting analysis established in *McDonnell Douglas*" to NJLAD cases. *See, e.g.*, *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010) (observing that "employment discrimination claims [under the NJLAD] proceed in accordance with the *McDonnell Douglas* burden-shifting paradigm"); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (recognizing that New Jersey "courts have adopted the burden-shifting framework articulated in *McDonnell Douglas* . . . to prove disparate treatment under [NJ]LAD")). Therefore, if a plaintiff establishes a prima facie case, "the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Viscik*, 800 A.2d at 833. If the employer is able to articulate such a reason, "the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." *Id.*

> The Third Circuit has adopted a three-pronged approach for determining whether beliefs are religious: First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Saqa*, 2024 WL 939689, at *4 (quoting *Fallon*, 877 F.3d at 491 ). "According to the Third Circuit, the view that a vaccine inflicts the moral wrong of harming the body is an isolated teaching, not a

religious belief." *Id.* (citing *Fallon*, 877 F.3d at 492). "A plaintiff may plausibly allege a religious belief even if she does not belong to an organized religion." *Aliano*, 2023 WL 4398493, at *5 (citing *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 562 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487). "And a belief may be religious in an individual's 'own scheme of things' regardless of how widely accepted it is in a particular organized religion." *Id.* (citations omitted). However, "[b]eliefs that are effectively medical in nature or amount to an 'isolated moral teaching' are insufficient to state a religious belief for purposes of Title VII and NJLAD." *Id.*

Here, the Court finds Plaintiff does not sufficiently allege a religious discrimination claim because he has not alleged enough factual material in the Complaint to show that his beliefs regarding vaccination were religious, rather than personal or medical; for example, he does not allege his beliefs address "fundamental and ultimate questions having to do with deep and imponderable matters" or are part of the Kemetism belief system as opposed to "an isolated teaching." For example, the court in *Saqa v. Factory Mutual Insurance Company* found a plaintiff failed to state a claim for religious discrimination in violation of NJLAD and Title VII under a failure-to-accommodate theory where plaintiff's belief was a "concern that the COVID-19 vaccine would manipulate his divine-created body and result in a sin against his God-given conscience[,]" which the court found was not religious because "it was not part of a comprehensive system that addressed fundamental and ultimate questions or that could be recognized by formal and external signs." 2024 WL 939689, at *4. Likewise, the court in *McKinley v. Princeton University* found a plaintiff's beliefs that "her body is a temple, [that] she decries and does all that she can to abolish any and all abuse against life and Mankind, and [that she] decries the suppression of knowledge, wisdom, philosophy, or data which would help Mankind" were not religious and instead appeared to be personal or medical beliefs and therefore not protectable under NJLAD. 2023 WL 8374486,

at *1, *4–5 (alterations in original). The *McKinley* court further noted the plaintiff provided "no additional information regarding the nature of her subjective religious beliefs nor how they are connected to any 'formal and external signs' of religion." *Id.* at *4; *see also id.* at *3 (citing other cases in this Circuit—involving plaintiffs who alleged objections to COVID-19-related policies and procedures on the basis of religion—where courts have dismissed the plaintiff's religious discrimination claims and/or found that the plaintiff's beliefs were not religious in nature).

On the other hand, the court in *Aliano v. Township of Maplewood* held a plaintiff[6] sufficiently alleged a religious discrimination claim where he stated in his religion-based request for an exemption from receiving the COVID-19 vaccine: "I believe that these drug therapies are altering my genetic code thus changing the 'fingerprint of God'" and "receiving an mRNA vaccine 'is against every single belief that I hold true with regards to my creation, my existence, and the miracle of life'"—because the court found plaintiff sufficiently connected his objection to vaccine to his beliefs regarding "fundamental and ultimate questions having to do with deep and imponderable matters," such as his creation and his very existence," and that his "apprehension towards the COVID-19 vaccine arises from his concern that the vaccine [would] prevent him from being the 'fingerprint of God'—rather than concerns regarding the potential side effects or dangers of the vaccine." 2023 WL 4398493, at *6–7. The *Aliano* court found the plaintiff's "specific and subjective belief in the 'fingerprint of God' as a Christian and his fear that vaccination [would] alter his genetic code" distinguished him from plaintiffs in other cases whose beliefs were not found to be religious. *Id.* at *7.

Here, unlike the plaintiff in *Aliano*, Plaintiff does not sufficiently connect his objection to

---

[6] The Court cites to this particular plaintiff's allegations as an example but notes this plaintiff was one of several plaintiffs whose religious discrimination claims the court addressed in the *Aliano* case. *See generally, Aliano*, 2023 WL 4398493.

receiving the COVID-19 vaccine to his religious beliefs and does not sufficiently plead his beliefs about vaccination are religious. Rather, Plaintiff's allegations are more closely aligned with those of the plaintiff in *Saqa*, whose belief that the COVID-19 vaccine "would manipulate his divine-created body and result in a sin against his God-given conscience" the court found was not religious because "it was not part of a comprehensive system that addressed fundamental and ultimate questions or that could be recognized by formal and external signs," and to those of the plaintiff in *McKinley*, who provided "no additional information regarding the nature of her subjective religious beliefs nor how they are connected to any 'formal and external signs' of religion." *See Saqa*, 2024 WL 939689, at *4; *McKinley*, 2023 WL 8374486, at *3–4. Plaintiff simply conclusorily alleges that he is a follower of Kemetism and that receiving a COVID-19 would have violated his sincerely held religious beliefs. This is insufficient to survive a motion to dismiss.

Even if the Court assumes for the purpose of this Opinion that Plaintiff sufficiently alleged he had a sincerely held religious belief, Plaintiff has not sufficiently alleged how that belief conflicted with Defendant's COVID-19 vaccination policy. Accordingly, construing all allegations in the Complaint as true and all inferences in a light most favorable to Plaintiff, the Court finds Plaintiff has not sufficiently alleged religious discrimination in violation of the NJLAD. Because the Court finds Plaintiff has not sufficiently alleged a religious discrimination claim, the Court likewise finds Plaintiff has not sufficiently alleged a claim for wrongful termination on the basis of religion.

### 2. Alleged Harassment/Hostile Work Environment

Defendant argues Plaintiff also fails to state a claim for harassment/hostile work environment in violation of the NJLAD because being unvaccinated is not a protected status, and even if the Court found otherwise, the alleged conduct in the Complaint does not constitute the

14

"severe or pervasive" conduct required for such a claim. (ECF No. 10-1 at 3, 14–16.) Defendant also asserts Plaintiff fails to state a harassment claim because while he "alleges in his Opposition for the first time that he was harassed as a follower of Kemetism[,]" he alleges in his Complaint that he was harassed on the basis of refusing to receive the COVID-19 vaccine, not based on religion or race. (ECF No. 13 at 5 n.1.)

In opposition, Plaintiff clarifies that he is not seeking protected status as an unvaccinated person but rather contends he states a harassment claim because he has protected status as a devout follower of Kemetism. (ECF No. 12 at 10–11.) Plaintiff argues that his practice of Kemetism formed the basis of his opposition to the COVID-19 vaccine and, knowing this, Defendant treated him with hostility that was "severe and pervasive, such that a reasonable person of the same class would believe the working conditions had been altered and the environment was hostile." (*Id.* at 11.)

"Under the NJLAD, a plaintiff states a claim for a religiously hostile work environment by showing that the 'complained-of conduct (1) would not have occurred but for the employee's [religion]; and it was (2) severe or pervasive enough to make a (3) reasonable [Kemetism follower] believe that (4) the conditions of employment were altered and the working environment was hostile or abusive.'" *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 277 (3d Cir. 2001) (first alteration in original) (quoting *Hurley v. Atl. City Police Dep't,* 174 F.3d 95, 114 (3d Cir. 1999)). The New Jersey Supreme Court adopted the "severe or pervasive" test for NJLAD hostile work environment claims, as part of its comprehensive standard, which "conforms to the standard for establishing workplace racial or gender harassment under federal Title VII law." *Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. 1998) (citations omitted). "Severe or pervasive harassment can be distinguished from the 'mere utterance of an ethnic or racial epithet which engenders offensive

feelings in an employee.'" *Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "In determining if a work environment is hostile or abusive, courts look to totality of the circumstances[.]" *Id.* "Courts must consider the frequency or severity of the conduct, whether the conduct was physically threatening or humiliating, or merely an offensive utterance and whether the conduct unreasonably interfered with plaintiff's work performance." *Jackson v. Gannett Co.*, Civ. A. No. 08-06403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011) (citing *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)). "In evaluating a hostile work environment claim under both [Title VII] and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated incidents (unless extremely serious)' are not sufficient." *Nuness*, 221 F. Supp. 3d at 601 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, Plaintiff alleges he suffered harassment and a hostile work environment for choosing not to receive the COVID-19 vaccination including sometimes being called a "fucking anti-vaxxer." However, while admittedly insensitive, inappropriate, and offensive, calling someone a "fucking anti-vaxxer," without more, does not rise to the level of harassment/hostile work environment in violation of the NJLAD. *See Nuness*, 221 F. Supp. 3d at 601. Further, to the extent Plaintiff is alleging he was harassed for being a Kemetism follower rather than solely on the basis of his choosing not to receive the COVID-19 vaccine, facts supporting that allegation are not alleged in the Complaint. Accordingly, the Court finds Plaintiff has failed to sufficiently allege a harassment/hostile work environment claim in violation of the NJLAD.

Therefore, Defendant's Motion to Dismiss Count I of the Complaint is **GRANTED**.

### B. Defendant's Motion to Dismiss Count II of the Complaint—Alleged Racial Discrimination in Violation of the NJLAD

Defendant argues Plaintiff fails to state a claim of discrimination on the basis of race

because he does not allege that Defendant's COVID-19 vaccination policy, either on its face or in application, "was in any way tied to the employees' race, ethnicity, or any other protected category (or that his replacement did not require a religious accommodation to the vaccine requirement)." (ECF No. 10-1 at 18.) Defendant contends that Plaintiff's subjective belief that Defendant's decision to terminate his employment was motivated by racial animus is not sufficient to establish an inference of discrimination. (ECF No. 13 at 12.) Additionally, Defendant asserts Plaintiff's termination of employment was based on his failure to comply with Defendant's mandatory vaccination policy, not based on his race or ethnicity. (ECF No. 10-1 at 18.) Defendant states Plaintiff himself admits in his Complaint that Defendant's reason for terminating his employment "was his own choice not to comply with [Defendant's] vaccination policy." (*Id.* (citing ECF No. 1-1 ¶ 26).) Further, Defendant argues Plaintiff fails to plausibly allege Defendant enacted or administered its COVID-19 vaccination policy with any racial animus and that Plaintiff also does not allege that the person(s) who decided his accommodation request even knew his race. (ECF No. 13 at 12.)

In opposition, Plaintiff contends he sufficiently states a racial discrimination claim because he alleges he: (1) belongs to a protected class as an African American (and practices Kemetism, which is a religion observed almost exclusively by other African Americans), (2) was qualified for his position, (3) suffered an adverse employment action by being terminated, and (4) Defendant replaced him with a white man who does not practice Kemetism. (ECF No. 12 at 13.) Plaintiff also argues "he will seek evidence that Defendant intentionally sought to hire a white man rather than risk hiring another Black man who practices a Black religion[,]"[7] which discovery may support,

---

[7] While Plaintiff asserts this statement in his Opposition, this fact is not alleged in the Complaint. (*See* ECF No. 1-1.)

and that he also "has an interest in determining how Defendant treated accommodation requests where the religion was Christianity or Judaism, for instance[,]" as opposed to some other religion like Kemetism. (*Id.* at 14.)

"Where there is no direct evidence of discrimination, race discrimination claims under both Title VII and NJLAD are analyzed under the now familiar *McDonnell Douglas* burden-shifting framework." *Taylor v. Amcor Flexibles Inc.*, 669 F. Supp. 2d 501, 505 (D.N.J. 2009), *aff'd*, 507 F. App'x 231 (3d Cir. 2012) (citations and footnote omitted). Under this framework, a plaintiff must first allege a *prima facie* case of racial discrimination by showing that:

> (1) he belongs to a protected class;
> (2) he was performing his job at a level that met his employer's legitimate expectations;
> (3) he suffered an adverse employment action; and
> (4) the employer sought someone who is not a member of the protected class to perform the same work after the plaintiff's termination, or similarly situated employees who are not members of the protected class were not subjected to the adverse action.

*Id.* at 506. "A plaintiff may show circumstances giving rise to an inference of discrimination with any kind of relevant evidence, including comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) (quoting *McFadden v. Whole Foods Mkt. Grp., Inc.*, Civ. A. No. 19-01103, 2021 WL 736899, at *7 (E.D. Pa. Feb. 25, 2021)).

Here, Plaintiff meets the first prong because he is Black/African American and therefore belongs to a protected class. Plaintiff also meets the second prong because he alleges that at all relevant times, his "job performance met or exceeded Defendant's reasonable expectations[,]" and Defendant does not contend otherwise. (*See* ECF No. 1-1 ¶ 17; ECF Nos. 10-1, 13.) However, Plaintiff fails to plausibly allege that the adverse employment action he suffered, *i.e.*, Defendant's

termination of his employment, was because of his race. Instead, Plaintiff conclusorily alleges Defendant's decision to terminate his employment was motivated, in whole or in part, by his race/ethnicity and that Defendant hired a white man who is not a follower of Kemetism to replace him (*see* ECF No. 1-1 ¶¶ 27, 40–46), but these sparse allegations alone are not sufficient to show Defendant discriminated against him on the basis of race/ethnicity. *See Foy v. Wakefern Food Corp.*, Civ. A. No. 09-1683, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) ("A mere allegation that an adverse employment action was motivated by [a protected characteristic], without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient."). As such, the Court cannot find Plaintiff has sufficiently alleged he suffered racial discrimination in violation of the NJLAD.[8]

Therefore, Defendant's Motion to Dismiss Count II of the Complaint is **GRANTED**.

### C. Defendant's Motion to Dismiss Count III of the Complaint—Alleged Retaliation in Violation of the NJLAD

Defendant argues Plaintiff fails to state a claim for retaliation in violation of the NJLAD because (1) he does not allege he was in a protected category, engaged in a protected activity, or that there is a plausible link between a protected activity and his termination of employment; and

---

[8] Additionally, while Plaintiff may perceive his termination as unfair or arbitrary, the Court cannot find based on the allegations in the Complaint that Plaintiff has sufficiently alleged that his termination from Defendant resulted from racial discrimination. Indeed, Plaintiff elsewhere explicitly alleges Defendant terminated him because of his non-compliance with the vaccination policy and/or because of his religion rather than his race. (*See* ECF No. 1-1 ¶ 26 ("In March 2022, shortly after he reported his concerns to HR, Defendant fired [Plaintiff] due to his refusal to violate his religious beliefs via [COVID-19] vaccination."); *id.* ¶ 38 ("Defendant's decision to terminate Plaintiff's employment was motivated, in whole or in part, by Plaintiff's sincerely held religious belief."); *id.* ¶ 43 ("Defendant refused to accommodate Plaintiff's religion, and consequently fired him because of it."); *id.* ¶ 58 ("Defendant breached the contract by terminating Plaintiff's employment for refusing to receive the covid-19 vaccine").) While Plaintiff may plead parallel theories of recovery and may plead in the alternative, *AV Design Servs., LLC. v. Durant*, Civ. A. No. 19-08688, 2021 WL 1186842, at *8 (D.N.J. Mar. 30, 2021), Plaintiff's Complaint does not contain sufficient allegations supporting a racial discrimination claim in violation of the NJLAD.

(2) "his alleged report of harassment, and the alleged retaliation, post-date the time by which he had already made his final decision not to comply with the vaccination policy and was informed he would be considered a voluntary resignation." (ECF No. 10-1 at 3, 19–21; ECF No. 13 at 13.) Defendant further argues that to the extent Plaintiff alleges Defendant retaliated against him for his complaint to HR about comments directed at employees who refused to receive the COVID-19 vaccine, his claim still fails because the alleged conduct does not constitute harassment, and even if Plaintiff suffered harassment, "his complaints about it could not have been causally linked to any change in the terms or conditions of his employment." (ECF No. 10-1 at 20–21.)

In opposition, Plaintiff argues he states a retaliation claim because he alleges he "was in a protected class as a follower of Kemetism, a minority religion"; he "engaged in two forms of protected activity known to the employer, first by requesting a religious accommodation, and then by reporting the hostile work environment he had been experiencing to Defendant's Human Resources department"; Defendant terminated his employment; and his "termination occurred within weeks of his second protected activity, on March 31st, 2022, following a period of growing hostilities after he submitted his accommodation request." (ECF No. 12 at 12.)

The NJLAD prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity. N.J. Stat. Ann. § 10:5-12(d). To state a *prima facie* case for retaliation under NJLAD, an employee must demonstrate: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson*, 260 F.3d at 286.[9]

---

[9] Some courts explicitly include a fourth element in analyzing whether a plaintiff has stated a claim for retaliation in violation of the NJLAD—*i.e.*, that plaintiffs show they are in a protected class. *See, e.g.*, *Berdzik v. Physicians Endoscopy, LLC*, Civ. A. No. 20-11656, 2021 WL 3260857, at *7

"An NJLAD retaliation claim can only succeed where the plaintiff shows that he or she faced reprisal for opposing conduct that the NJLAD prohibits, including discrimination on the basis of race, color, religion, sex, or national origin." *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 676 (D.N.J. 2015). "As in religious discrimination claims, the *prima facie* case for retaliation is the same under Title VII and the NJLAD." *McKinley*, 2023 WL 3168026, at *2.

"To engage in protected activity, the employee must identify what illegal employment practice is being opposed, by either implicitly or explicitly alleging that a protected characteristic was the basis for the adverse employment action." *Phillips*, 624 F. Supp. 3d at 546–47 (citation omitted). "'A general complaint of unfair treatment,' however, 'is insufficient to establish protected activity' under Title VII and the NJLAD." *Id.* at 547 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). "The 'complaint[] must be specific enough to notify management of the particular type of discrimination at issue in order to constitute "protected activity."'" *Id.* (alteration in original) (quoting *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)).

Here, the Court finds Plaintiff failed to plead a retaliation claim in violation of the NJLAD because he has not identified what "illegal employment practice [] being opposed" was the basis for the adverse employment action—his termination of employment with Defendant. For example, Plaintiff does not allege that Defendant's vaccination policy was unlawful. Rather, Plaintiff alleges he was fired "shortly after" reporting to HR about the hostile work environment he had experienced based on choosing to not receive the COVID-19 vaccination and further alleges that "Defendant's

---

(D.N.J. July 30, 2021); *Victor*, 4 A.3d at 141. Other courts do not explicitly include this fourth element in their analysis. *See, e.g.*, *Abramson*, 260 F.3d at 286 (articulating three elements for a *prima facie* case of retaliation under Title VII and the NJLAD); *Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. 1996) (same).

decision to terminate Plaintiff's employment was motivated, in whole or in part, by Plaintiff's protected activity; specifically, his complaint to HR." (*See* ECF No. 1-1 ¶¶ 25–26, 47–52.) Absent more, these allegations are insufficient to assert a claim for unlawful retaliation. *See McKinley*, 2023 WL 3168026, at *3 (granting defendant's motion to dismiss plaintiff's claims of retaliation in violation of NJLAD and Title VII where the complaint contained largely conclusory allegations as to defendant's alleged retaliation and noting that because the Court found plaintiff also failed to state a religious discrimination claim, as she failed to allege a sincerely held religious belief, that her unlawful retaliation claims thus also fail); *id.* ("Courts in this Circuit have held that where a plaintiff opposes COVID-19 mandates by an employer under Title VII and is terminated, the plaintiff fails 'to state a claim for religious discrimination . . . or retaliation' without first alleging a sincerely held religious belief." (citations omitted)); *see also Divine Equal. Righteous v. Overbrook Sch. for the Blind*, Civ. A. No. 23-00846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023) ("Merely applying for a religious accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim. . . . Accordingly, [p]laintiffs may not rely on merely applying for a religious accommodation as a form of protected activity." (citations omitted)). Moreover, elsewhere, Plaintiff explicitly alleges that Defendant terminated him because of his non-compliance with the vaccination policy and/or because of his religion rather than his race. *See supra* n.9.

Therefore, Defendant's Motion to Dismiss Count III of the Complaint is **GRANTED**.

### D. Defendant's Motion to Dismiss Count IV of the Complaint—Alleged Breach of Contract or Estoppel

Defendant argues Plaintiff fails to state a claim for breach of contract or estoppel because he was as an at-will employee and, as such, the terms of his employment were controlled by the

offer letter, not any alleged prior oral agreements. (ECF No. 10 at 21–26.) Defendant also contends "it is well-established that an employer may unilaterally change its corporate policies, while it needs no reason at all to terminate an at-will employee" and Defendant's "alleged statements about its vaccination policy when hiring Plaintiff (even if made) were not contractual terms and could not negate Plaintiff's clearly established at-will employment when [Defendant] changed that policy over a year later." (*Id.* at 3–4.) Defendant also asserts discussions of forward-looking policies do not create contractual obligations superseding at-will employment. (ECF No. 13 at 13, 15.)

   In opposition, Plaintiff does not dispute that he was an at-will employee of Defendant but instead argues that he sufficiently states a breach of contract or estoppel claim because although he was an at-will employee, the explicit prior oral agreement between the parties altered the terms of the at-will relationship. (ECF No. 12 at 15–19.) Plaintiff contends Defendant made a promise to him during the hiring process—namely, that he would never be forced by Defendant to get vaccinated—and he reasonably relied on this to his detriment. (*Id.* at 14.) Plaintiff states "Defendant's ability to unilaterally change its policies does not encompass a right to unilaterally reverse an explicit guarantee it gave to an employee as a term of his employment." (*Id.*) Additionally, Plaintiff asserts that contrary to the cases to which Defendant cites in support of its argument, Plaintiff alleges "he was told, twice, that the company 'will not be mandating' vaccination" and had Defendant instead advised him that there were no plans *at that time* to mandate vaccination or told him more "generally that it expected his employment to be long-lasting . . . then any reasonable employee in [his] shoes would have been able to recognize the possibility of future change, and [would] consider his options accordingly." (*Id.* at 19.) Therefore, Plaintiff argues this was not a statement of present intent and that "[i]t was that specific

agreement—that of the innumerable grounds on which Plaintiff might eventually lose his job, failure to vaccinate would not be among them—that altered the terms of the at-will employment relationship." (*Id.* at 16, 19.)

To plead a cause of action for a breach of contract, a plaintiff must allege, "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also EnviroFinance Grp., LLC v. Env't Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. App. Div. 2015) ("To prevail on a breach of contract claim [under New Jersey law], a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages."). The general requirements for a valid contract include, among other things, valid consideration. *See Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. App. Div. 2002) (holding that, "[a]s a basic premise," no contract is enforceable "without the flow of consideration—both sides must 'get something' out of the exchange" (quoting *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1171 (N.J. 1983)).

To state a claim for equitable estoppel in New Jersey, a plaintiff must plead "a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation will probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." *Children's Health Def., Inc. v. Rutgers, State Univ. of N.J.*, Civ. A. No. 21-15333, 2022 WL 4377515, at *11 (D.N.J. Sept. 22, 2022), *aff'd sub nom.*, 93 F.4th 66 (3d Cir. 2024) (quoting *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011)). "However, a 'truthful statement as to the present intention of a party with regard to future acts is not the foundation upon which an estoppel may be built.'" *Id.* (quoting *Alexander v. Cigna Grp.*, 991 F.

Supp. 427, 439 (D.N.J. 1998)). Additionally, "[t]o state a claim for promissory estoppel in New Jersey, a plaintiff must plead facts [] establishing: '1) a clear and definite promise; 2) made with the expectation that the promisee will rely upon it; 3) reasonable reliance upon the promise; 4) which results in definite and substantial detriment.'" *Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.*, Civ. A. No. 10-01453, 2011 WL 773218, at *5 (D.N.J. Feb. 28, 2011) (quoting *Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.,* 490 F. Supp. 2d 556, 561 (D.N.J. 2007)). "In the context of at-will employment, some courts do not recognize a cause of action for promissory estoppel" but "[o]ther courts have allowed for such a cause of action when an employee has sued under promissory estoppel because she moved or left another job in reliance on an offer of employment which the employer later rescinded." *Blizzard v. Exel Logistics N. Am., Inc.*, Civ. A. No. 02-04722, 2005 WL 3078175, at *14 (D.N.J. Nov. 15, 2005) (citing *Peck v. Imedia, Inc.*, 679 A.2d 745, 752–53 (N.J. App. Div. 1996) (listing cases)). "To sustain a promissory estoppel claim in the context of at-will employment, a plaintiff must allege that he suffered 'detriment beyond that suffered by every at-will employee upon termination.'" *Taylor v. Lincare, Inc.*, Civ. A. No. 15-06284, 2016 WL 3849852, at *12 (D.N.J. July 15, 2016) (quoting *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 620 (D.N.J. 2001)). "In essence, a plaintiff must allege that he sustained 'losses incident to the reliance upon the job offer itself,' such as relocating, incurring moving expenses, giving up clients, or other costs undertaken because of the job offer or promise of continued employment." *Id.*

Here, the Court finds Plaintiff fails to plead a breach of contract claim because he does not sufficiently allege a valid contract with consideration between him and Defendant with respect to Defendant's statement that it would never force Plaintiff to get vaccinated. For example, Plaintiff does not allege he offered anything of value to Defendant in exchange for the assurance that he

would never be forced to get vaccinated, nor does Plaintiff allege that Defendant promised him he would never be fired for failing to get vaccinated at some later point in time. Plaintiff also does not allege that he inquired about his vaccination concern and/or discussed potential vaccination requirements with Defendant upon receiving his offer of employment or anytime thereafter. To the extent that Plaintiff contends his never being forced to be vaccinated was a condition of his acceptance of his employment offer from Defendant, this is not clear from the allegations in his Complaint.

The Court also finds Plaintiff fails to sufficiently allege an estoppel claim in the alternative because to the extent Plaintiff is asserting an *equitable* estoppel claim, Plaintiff does not allege any "knowing and intentional misrepresentation" by Defendant (as opposed to "a truthful statement as to the present intention of a party with regard to future acts"); and to the extent Plaintiff is asserting a *promissory* estoppel claim, he does not adequately allege that he "suffered 'detriment beyond that suffered by every at-will employee upon termination.'" *See Children's Health Def., Inc.*, 2022 WL 4377515, at *11 (citations omitted); *Taylor*, 2016 WL 3849852, at *12.

Therefore, Defendant's Motion to Dismiss Count IV of the Complaint is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 10) is **GRANTED** in its entirety, and Plaintiff's Complaint (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE** and with leave to amend. An appropriate Order follows.

                                        */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**

Dated: July 8, 2024

26